UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORNA GERIS, Individually, and as Personal
Representative of the Estate of FRED GERIS, and as
Parent and Natural Guardian of CHRISTOPHER,
MATTHEW, and KRISTINE GERIS; and the
WORKPLACE SAFETY & INSURANCE BOARD
OF ONTARIO, as Subrogee,

　　　　　　　　Plaintiffs,

v.

DiSILVA TAUNTON EXPRESS, INC.
and JOSE L. MARTE,

　　　　　　　　Defendants.

**PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT IN RESPONSE TO DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT**

Civil Docket No.:  1:07-CV-376-JTC

---

　　　　Pursuant to Local Civil Rule 56(a)(2), plaintiffs Lorna Geris, Individually and as Personal Representative of the Estate of Fred Geris, and as Parent and Natural Guardian of Christopher, Matthew, and Kristine Geris; and the Workplace Safety & Insurance Board of Ontario, as Subrogee (collectively, "plaintiffs"), submit this statement in opposition and response to the Local Rule 56.1 [sic] Statement of Material Facts submitted by defendants DiSilva Taunton Express, Inc. ("DTE") and Jose L. Marte (collectively, "defendants") (Doc. No. 67-24). Any statements admitted herein are admitted solely for the purpose of this response and not for any other purpose.  Plaintiffs also incorporate their Local Rule 56(a)(1) Statement of Material Facts submitted in support of their motion for partial summary judgment.

1.      On the morning of February 22, 2006 an accident between two tractor-trailers happened on Interstate 90 east in Evans, New York, near the Angola service area. *See* the MV104A police report attached as Exhibit "A".

**RESPONSE: Admitted.**

2.      When the accident happened, Fred Geris was driving a 2003 Kenworth tractor-trailer in the right lane of the I-90 east. *See* Exhibit "A".

**RESPONSE: Denied as stated. It is admitted that, prior to the collision between the tractor-trailers at issue, Fred Geris was driving a 2003 Kenworth tractor (and attached trailer) in the right lane of I-90 eastbound. However, at the time the initial contact between the tractor-trailers occurred, Fred Geris was attempting to steer his vehicle into the left lane in order to avoid a collision with the tractor-trailer driven by Jose Marte, which had suddenly pulled out in front of him.** *See* **NYS Police Collision Reconstruction Unit Report, attached to Affidavit of Paul Morrison-Taylor, sworn to February 25, 2013 ("Taylor Affid.") as Exhibit 6; Deposition of James Williams, May 6, 2008 ("Williams Dep."), at 45, 48, and 178, attached to Taylor Affid. as Exhibit 15.**

3.      At the same time, defendant Jose Marte was parked in a 2001 Freightliner tractor-trailer on the right shoulder of the Angola service area deceleration ramp. *See* Exhibits "A" and "B".

**RESPONSE: Denied as stated. It is admitted that, prior to the collision between the tractor-trailers, Jose Marte had parked his 2001 Freightliner tractor (and attached Great Dane refrigerated trailer) on the right shoulder of the Angola service area deceleration ramp. However, at the time of the initial collision between the tractor-trailers, Jose Marte was no longer parked in that location.** *See* **NYS Police Collision Reconstruction**

Unit Report, attached to Taylor Affid. as Exhibit 6; Williams Dep. at 176-177, attached to Taylor Affid. as Exhibit 15; Deposition of Charles Lutz, May 14, 2008 ("Lutz Dep."), at 53-58, attached to Taylor Affid. as Exhibit 16.

    4.    Mr. Marte crossed over the ramp leading into the service area and was struck by Mr. Geris. *See* Exhibits "A" and "B".

**RESPONSE: Denied as stated. It is admitted that Jose Marte drove his 2001 Freightliner tractor (and attached refrigerated trailer) across the deceleration ramp leading into the Angola service area, but paragraph 4 of defendants' Local Rule 56.1 [sic] Statement is incomplete and inaccurate to the extent it fails to state that defendant Jose Marte also drove across the cross-hatched "neutral area" to the left of that ramp and directly into the path of travel of Fred Geris in the right lane of I-90 east, thereby causing the collision between the two tractor-trailers. *See* NYS Police Collision Reconstruction Unit Report, attached to Taylor Affid. as Exhibit 6; Uniform Traffic Tickets, attached to Taylor Affid. as Exhibit 11; Certificate of Disposition, attached to Taylor Affid. as Exhibit 13; Transcript of DMV Hearing re: Jose L. Marte, February 21, 2007, attached to Taylor Affid. as Exhibit 12; Lutz Dep. at 53-58, attached to Taylor Affid. as Exhibit 16.**

    5.    During the subsequent collision sequence, Mr. Geris was ejected through the passenger side of his vehicle. He did not survive the accident. See Exhibits "A" and "B".

**RESPONSE: Denied as stated. It is admitted that Fred Geris was ejected during the accident sequence, and that Fred Geris did not survive the accident at issue. However, the exact timing of Fred Geris' ejection, and the particular portal through which he was ejected, has not been established, and will be the subject of anticipated expert testimony from both plaintiffs' and defendants' experts. *See e.g.*, Expert Report of**

**plaintiffs' Expert Ali M. Sadagh, Ph.D., P.E., CMfgE, attached as Exhibit 26 to Taylor Affid.**

6. When the accident happened, Mr. Marte was twenty-four years old. ("P" at 6-7).

**RESPONSE: Admitted.**

7. Mr. Marte received his driver's license at age eighteen and thus had six years of driving experience when the accident happened.

**RESPONSE: Denied as stated. It is admitted that defendant Jose Marte received his non-commercial driver's license at age eighteen. However, he did not receive his commercial driver's license until December of 2005 – only two months before the accident at issue – and thus had only two months of commercial driving experience at the time of the accident. *See* Deposition of Jose L. Marte, April 28, 2008 ("Marte Dep."), at 40-41, attached to Taylor Affid. as Exhibit 14.**

8. Mr. Marte attended the New England Tractor Trailer School before the accident and underwent training there on how to operate a tractor-trailer. ("P" at 30-36).

**RESPONSE: Admitted.**

9. Mr. Marte had a valid Class A commercial driver's license when the accident happened. This license allowed him to drive tractor-trailers. ("P" at 41-45).

**RESPONSE: Admitted.**

10. Mr. Marte applied to drive truck for DiSilva Taunton in January 2006. *See* Exhibit "Q".

**RESPONSE: Admitted.**

11. Mr. Marte's driving was graded by DiSilva Taunton employee Peter Cambra. His grades were 3A's, 2C's (for upshifting and downshifting), and most B's. ("P" at 65-67); *See* Exhibit "Q".

**RESPONSE: Denied as stated. It is admitted that Peter Cambra evaluated Mr. Marte's driving on or about January 9, 2006, but paragraph 11 of defendants' Local Rule 56.1 [sic] Statement is incomplete and inaccurate to the extent that it fails to state that defendant Jose L. Marte: (a) received "C" grades for "up shifting" and "down shifting;" (b) received "B" grades for "starting stopping," "lane usage" and "use of mirrors;" and (c) received a grade of "N/A" for highway driving - because he was never actually tested on his highway driving ability.  *See* Exhibit 24 to Taylor Affid.;  *see also* Deposition of Peter Cambra, taken April 30, 2008 ("Cambra Dep.") at 73-75, attached to Taylor Affid. as Exhibit 17.  In addition, Mr. Marte never received a copy of those grades, and never received any additional training or instruction on the deficiencies reported.  *See* Marte Dep. at 65-67, attached to Taylor Affid. as Exhibit 14.**

12. Mr. Marte received further training from DiSilva Taunton, such as watching videos, receiving a manual, driving during certain weather conditions, and going on trips with a more experienced driver.  ("P" at 54-64, 69-72, 86-88, 93-96).

**RESPONSE: Denied as stated. Mr. Marte's so-called "further training" from DTE consisted of watching a one-hour video before DTE allowed him to start driving over-the-road for DTE.  *See* Marte Dep. at 53, attached to Taylor Affid. as Exhibit 14. Mr. Marte did not do any "driving during certain weather conditions," as alleged in paragraph 12 of defendants' Local Rule 56.1 [sic] Statement – rather, he claimed that the video that he**

**watched mentioned the topic of "driving during certain weather conditions."** *See id.* **at 54-55.**

**DTE's Safety Director at the time, Melissa Eugenio-Gibson, also testified that DTE's new driver orientation did not deal with actually driving a truck on a highway, and did not involve any safety training.** *See* **Deposition of Melissa-Eugenio Gibson, April 30, 2008 ("Gibson Dep."), at 33-38, attached to Taylor Affid. as Exhibit 18. Instead, DTE's half hour to hour long orientation that Mr. Marte attended dealt solely with how to fill out a log book and complete trip records.** *See* **Deposition of Peter Cambra, April 30, 2008 ("Cambra Dep."), at 60-61, attached as Exhibit 17.**

**Mr. Marte was not sure whether he received a "manual" from DTE (much less what was in it, if he did)** (*see* **Marte Dep. at 85-86), and DTE has never been able to produce a copy of any alleged manual that defendant Mr. Marte supposedly received. Finally, Mr. Marte's "trips with a more experienced driver" did not constitute training. Instead, Mr. Marte and the other driver took turns sleeping while the other drove Mr. Marte could not recall any substantive training having occurred during those trips, and DTE has never been able to provide any written proof that any such trip(s) occurred.** *See* **Marte Dep. at 62-63, attached to Taylor Affid. as Exhibit 14. Furthermore, DTE's Safety Director, Mrs. Gibson, testified that Mr. Marte did not go on any check-out runs and that he was exclusively paired with co-driver Noel Columna (who had even less experience driving tractor-trailers than did Mr. Marte) from the start. Gibson Dep. at 41, 236-237, attached to Taylor Affid. as Exhibit 18.**

13. When the accident happened, Mr. Marte was driving a 2001 Freightliner. He had driven that vehicle before. ("P" at 108).

**RESPONSE: Denied as stated. At the time of the accident, Mr. Marte was driving a 2001 Freightliner and an attached 1999 Great Dane refrigerated trailer.** *See* **NYS Police Collision Reconstruction Unit Report, attached to Taylor Affid. as Exhibit 6.**

14. After the accident, the tractor-trailer driven by Mr. Marte was inspected by police and investigators. It was determined that no mechanical issues contributed to the accident. *See* Exhibit "B".

**RESPONSE: Denied as stated. It is admitted that the report completed by the NYS Police Collision Reconstruction Unit concluded that there were no mechanical issues related to causation. However, the NYS Police Commercial Vehicle Enforcement Unit issued a Driver/Vehicle Examination report, in which the inspecting officer found a number of mechanical issues with Mr. Marte's tractor-trailer that were not related to the damages resulting from the crash (as well as numerous log book and hours of service violations).** *See* **Driver/Vehicle Examination Report, attached to Taylor Affid. as Exhibit 7.**

15. When the accident happened, Mr. Geris was married to Lorna Geris. They had three biological children. NEED CITE. [sic].

**RESPONSE: Denied as stated. It is admitted that Mr. and Mrs. Geris were married at the time of the accident and had three biological children together.**

16. On behalf of Mr. Geris and his estate, his surviving wife, Lorna Geris accepted benefits through the Ontario Workplace Safety and Insurance Act ("WSIA" or Act). *See* the election forms attached as Exhibit "K".

**RESPONSE: Admitted.**

17.     Because of Mr. Geris was involved in an accident during the course of his employment, and because he did not survive, Ms. Geris [sic] had two options on how to proceed. First, she could receive benefits through the WSIA.  Second, she could waive the right to those benefits in order to bring a third-party action against potentially responsible tortfeasors.  See WSIA § 30(1), 30(2), and 30(14).

**RESPONSE:  Denied.  The allegations contained in Paragraph 17 of defendants' Rule 56.1 [sic] Statement are assertions of law, not statements of fact.  As such, no response is required to this paragraph.  However, plaintiffs affirmatively state that this paragraph does not correctly state the applicable law and, as discussed in the plaintiffs' Memorandum of Law in Support of Plaintiff's Cross-Motion, and in Opposition to Defendants' Motion, the two options identified in this paragraph are not mutually exclusive, and Mrs. Geris was not required to waive her right to benefits in order to bring this action in her individual, representative, and parent and natural guardian capacities, with the consent of the WSIB.**

18.     Ms. Geris [sic] elected to receive benefits under the WSIA, and thus signed the required WSIA election forms.  *See* Exhibit "K".

**RESPONSE:  Admitted.**

19.     The amount of money that Ms. Geris [sic] was to receive was determined through the application of the WSIA.  Because she had three infant children when the accident happened, they were all taken into account in calculating the amount of money her family was to receive.  *See* Exhibit "L".

**RESPONSE:  Denied as stated.  It is admitted that the benefits that Mrs. Geris received from the WSIB were determined in accordance with the requirements of the**

**WSIA, and it is further admitted that the WSIB's determination took into account the fact that Mr. and Mrs. Geris had three children together at the time Mr. Geris was killed. To the extent that paragraph 19 of defendants' Rule 56.1 [sic] Statement implies that those benefits were the only money that Mrs. Geris was to receive, however, plaintiffs specifically note that it is up to this Court, and a jury sitting in the Western District of New York, to determine what additional amounts are due to Mrs. Geris and her children. Mrs. Geris and her children will be entitled to any surplus, over the amount of benefits paid or to be paid by the WSIB that may be recovered in this action.**

20. Because Ms. Geris [sic] chose to receive WSIA benefits, she was required to sign two election forms. *See* Exhibit "K".

**RESPONSE: Admitted.**

21. One of the election forms signed by Ms. Geris [sic] was entitled "Election Form - Claim by Dependents for Workplace Safety and Insurance Benefits, Schedule1, Motor Vehicle - Untied States." By signing this form, Ms. Geris [sic] consented that by accepting WSIA benefits, "I understand that I cannot bring a legal action against anybody on my own." *See* Exhibit "K".

**RESPONSE: Denied as stated. It is admitted that Mrs. Geris signed the form referred to in paragraph 21 of defendants' Rule 56.1 [sic] Statement, but the remaining assertions made in this paragraph are assertions of law, not statements of fact. As such, no response is required to the remainder of this paragraph. However, plaintiffs affirmatively state that this paragraph does not correctly state the applicable law and, as discussed in plaintiffs' Memorandum of Law in Support of Plaintiff's Cross-Motion, and in Opposition to Defendants' Motion, Mrs. Geris was not required to waive her right to**

**benefits in order to bring this action in her individual, representative, and parent and natural guardian capacities, with the consent of the WSIB.**

22. The WSIA is administered by the Workplace Safety and Insurance Board of Ontario, Canada ("WSIB"), which is a statutory organization created by the Workers' Compensation Act of Ontario, Canada, and the WSIA. *See* Exhibit "C".

**RESPONSE: Admitted.**

23. The WSIB is a government entity part of the Ontario Ministry of Labor. ("O" at 74-75). Its purpose are to promote and ensure workplace safety, and to administer the workers' compensation system in Ontario, Canada. *See* Exhibit "C" at ¶ 3.

**RESPONSE: Admitted.**

24. Under WSIA § 10, if a surviving spouse like Ms. Geris [sic] elects to receive WSIA benefits, the WSIB receives an assignment of the personal injury claim, and becomes subrogated to the rights of the survivors to maintain a legal action. *See* WSIA § 30(10); Exhibit "C" at ¶ 8.

**RESPONSE: Denied as stated. It is admitted that the WSIB is an assignee/subrogee in this action. The remaining assertions made in paragraph 24 of defendants' Rule 56.1 [sic] Statement are assertions of law, not statements of fact. As such, no response is required to the remainder of this paragraph. Plaintiffs affirmatively state, however, that the WSIB's status as an assignee/subrogee does not preclude Mrs. Geris from bringing the claims she has asserted herein in her individual, representative, and parent and natural guardian capacities, with the consent of the WSIB.**

25. Here, the WSIA has received an assignment of the personal injury claims from Ms. Geris [sic] and has commenced the instant subrogation action. See Exhibit "C" at ¶ 8.

**RESPONSE: Denied as stated. It is admitted that WSIB is an assignee/subrogee in this action, that the WSIB received an assignment of claims from Mrs. Geris, and that the bases for the WSIB's claims are set forth in the Complaint in this action. The remaining assertions made in paragraph 25 of defendants' Rule 56.1 [sic] Statement are assertions of law, not statements of fact. As such, no response is required to the remainder of this paragraph.**

26. In this subrogation action, the WSIB seeks not only reimbursement of what it actually paid to the Geris family, but also seeks to recover surplus damages above-and-beyond what it has paid.

**RESPONSE: Denied as stated. It is admitted that the WSIB seeks to recover damages that exceed the benefits it has paid to Mrs. Geris and her children to date. However, to the extent defendants characterize that portion of the damages sought as "surplus damages," any such damages are sought for the benefit of Mrs. Geris and her bereft children, not the WSIB. Any so-called "surplus damages" must by law be, paid to Mrs. Geris and her children. In any event, the assertions made in paragraph 26 of defendants' Rule 56.1 [sic] Statement are assertions of law, not statements of fact. As such, no response is required to the remainder of this paragraph.**

Dated: Buffalo, New York
February 25, 2013

                                    PHILLIPS LYTLE LLP

                                    By: /s/ Paul Morrison-Taylor
                                          Paul Morrison-Taylor
                                          Craig A. Leslie
                                    Attorneys for Plaintiffs
                                    One HSBC Center, Suite 3400
                                    Buffalo, New York  14203
                                    Telephone No.:  (716) 847-8400
                                    ptaylor@phillipslytle.com
                                    cleslie@phillipslytle.com

TO:    RUPP, BAASE, PFALZGRAF,
         CUNNINGHAM & COPPOLA LLC
         R. Anthony Rupp, III, Esq.
         Joshua P. Rubin, Esq.
         Attorneys for Defendants
         1600 Liberty Building
         Buffalo, New York 14202
         Telephone No.:  (716) 854-3400
         rupp@ruppbaase.com

Doc #01-2641754.1